

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00016-CV
_____

IN RE SHIRE PLC, BAXTER INTERNATIONAL INC.,
BAXALTA INCORPORATED, AND VIROPHARMA INC.

Original Mandamus Proceeding

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

# O P I N I O N

In the trial court below, the real party in interest, Health Choice Advisory, LLC (HCA), brought a *qui tam* action under the Texas Medicaid Fraud Prevention Act (TMFPA) against Shire PLC, Baxter International Inc., Baxalta Incorporated, and ViroPharma Inc. (collectively Shire). Shire moved the trial court to dismiss the action under Rule 91a of the Texas Rules of Civil Procedure. The trial court denied the motion, and Shire filed this petition for a writ of mandamus asking us to compel the trial court to grant its motion to dismiss. For the reasons discussed below, we deny the petition.

## I.      Factual and Procedural History

### A.      The TMFPA and the Present Action

The TMFPA states,

A person commits an unlawful act if the person:

> . . . .

> (5)      except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program . . . .

TEX. HUM. RES. CODE ANN. § 36.002(5). This provision is known as the "anti-kickback section" of the TMFPA.

Section 36.011(a), subsections (2) and (3), provide that "a person acts 'knowingly'" under the TMFPA "if the person . . . (2) acts with conscious indifference to the truth or falsity of the information[] or (3) acts in reckless disregard of the truth or falsity of the information." TEX.

2

HUM. RES. CODE ANN. § 36.0011(a)(2)–(3). Section 36.101 of the TMFPA allows private persons to institute suits for civil remedies for violations of the Act "in the name of the person and of the state." TEX. HUM. RES. CODE ANN. §§ 36.101(a), 36.052. The petition in suits instituted by private persons must be filed *in camera* and served on the Texas Attorney General, and the suit must remain under seal until the earlier of the date on which the Attorney General elects to intervene and prosecute the action or 180 days after the date the petition was filed. TEX. HUM. RES. CODE ANN. § 36.102(a), (b) (Supp.), § 36.104(a), (b).

In its petition in this case, HCA alleged that Shire violated the anti-kickback section of the TMFPA by implementing two marketing programs that incentivized medical providers to prescribe certain pharmaceutical products covered by the Texas Medicaid Program. According to HCA, Shire provided nursing and support staff services to medical providers in exchange for the providers prescribing the covered products; it also alleged that, by virtue of these programs, Shire reduced the medical providers' attendant expenses, thereby increasing their profit margins for prescribing the covered products. HCA further alleged that, by increasing the providers' profit margins, these two programs constituted illegal kickbacks to the medical providers. Specifically, HCA alleged that, "in typical *quid pro quo* fashion," the medical providers would have to prescribe the covered products to obtain the identified support services.[1]

---

[1]Among other things, HCA alleged in its petition that Shire

> 47.  . . . . [E]ngaged in two schemes to induce recommendations by giving something of value to Prescribers for the purpose of inducing recommendations of the Covered Products.
> 48.  In the first scheme, Defendants, with assistance from third-parties, provided the services of skilled nurses, for free, in part to induce Prescribers to recommend [the covered products] to their patients.
> 49.  In the second scheme, Defendants, with substantial assistance from third parties, provided in-kind remuneration in the form of reimbursement support services, saving Prescribers thousands of dollars in administrative expenses, in part to induce Prescribers to recommend the Covered Products.

## B.     The Motion to Dismiss

Shire moved to dismiss this suit in the trial court under Rule 91a of the Texas Rules of Civil Procedure.  It alleged that HCA is "an affiliate of the National Health Care Analysis Group (NHCA Group), an agency created by investors and former Wall Street Investment Bankers for the purpose of pursuing false claims act litigation."  Shire further argued that in "2016 and 2017, acting through various shell companies, NHCA Group filed numerous, virtually identical *qui tam* actions across the country, against dozens of pharmaceutical companies."  Shire continued, "The plaintiffs in those actions made the same allegations HCA makes here:  that the defendants' nurse-educator and reimbursement-support services amounted to illegal kickbacks that resulted in the submission of fraudulent claims to federal and state healthcare programs."  Shire then alleged (1) that "[t]he United States, however, flatly rejected NHCA Group's theory and exercised its authority under the False Claims Act [(FCA)]to dismiss the federal claims brought by NHCA Group's affiliates" and (2) that, "[i]n moving to dismiss those claims, the United

---

. . . .

60.     Seeking to capitalize on the fact that follow-up and patient monitoring work is unprofitable for Prescribers, Defendants devised the free nurse program.  Through this program, Defendants devised a scheme that allowed them to offer Prescribers the time, expertise, and resources of multiple "nurse educators" to provide follow-up care and relieve the Prescribers' duty to monitor—all completely free of charge to the Prescribers.  Given that the free nurses were performing medical services that the Prescribers or their staff would otherwise have been required to perform, the Nurse Support Services saved Prescribers a significant amount of money they otherwise would have incurred.

. . . .

106.     Given that the administrative tasks associated with the provision of Reimbursement Support Services are time-consuming, Prescribers are less likely to prescribe a drug that imposes an undue burden on support staff because doing so decreases profitability.  Conversely, a Prescriber is much more likely to prescribe a drug if it can be prescribed with little or no administrative burden.

107.     These factors were not lost on Defendants.  Indeed, Defendants readily assumed the expense the Prescribers would otherwise have had to incur, knowing that the availability of Reimbursement Support Services would act as a powerful inducement to Prescribers to recommend the Covered Products over a competitor's products, especially in Texas where reimbursement for administrative expenses associated with approval is prohibited.

4

States, through the Department of Justice, explained that the allegations lacked both 'factual and legal support' and were an unfounded attack on 'common industry practices' that are 'appropriate and beneficial to federal healthcare programs and their beneficiaries.'"

Shire asserted two arguments to the trial court in support of its motions to dismiss. First, it argued that dismissal was required by the "public disclosure bar" of the TMFPA "because [RPI's] claims are based on allegations or transactions that were publicly disclosed—and thus available to state prosecuting authorities—well before HCA filed its petition in this case."[2] Second, it argued that "the petition has no basis in law for purposes of Rule 91a because it does not allege facts sufficient to show that Shire's product-support services were illegal kickbacks or that Shire acted with the scienter required to violate the TMFPA." The trial court denied Shire's motion to dismiss under Rule 91a.

## C.      The Petition for a Writ of Mandamus

Shire then petitioned this Court for a writ of mandamus, asking us to order the trial court to grant its motion. In its petition, Shire contends that this Court has jurisdiction to review its petition because "[t]he Texas Supreme Court has held that mandamus is available to review a trial court's denial of a motion to dismiss under Texas Rule of Civil Procedure 91a," that the trial court abused its discretion by failing to grant its motion to dismiss, and that it lacks an adequate remedy by appeal. In its petition, Shire reiterates the arguments it made to the trial court, but for

---

[2]The "public disclosure bar" is found in Section 36.113(b), which states,

> The court shall dismiss an action or claim under this subchapter, unless opposed by the attorney general, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Texas or federal criminal or civil hearing in which the state or an agent of the state is a part, in a Texas legislative or administrative report, or other Texas hearing, audit, or investigation, or from the news media, unless the person bringing the action is an original source of the information.

TEX. HUM. RES. CODE ANN. § 36.113(b).

ease of discussion, we will discuss them as three arguments rather than two: (1) that HCA's claims have no basis in law because they are barred as a matter of law by the TMFPA's public disclosure bar, (2) that—based on federal authorities interpreting a similar federal statute—the marketing schemes at issue here are not kickbacks under the TMFPA as a matter of law, and (3) that HCA failed to properly plead scienter as required by the TMFPA.

## II.    Standard of Review and Issue Presented

The Texas Supreme Court has held that mandamus is available to review a trial court's denial of a Rule 91a motion to dismiss. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (per curiam) (orig. proceeding). A party is entitled to a writ of mandamus when it demonstrates that the trial court abused its discretion and that it does not have an adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 840–41 (Tex. 1992). A trial court abuses its discretion when "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding), *disapproved of by In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex. 2009) (orig. proceeding)). In other words, because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,] . . . a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 840. In addition, the mere fact that "an appellate remedy . . . may involve more expense or delay than obtaining an extraordinary writ" does not establish that the appellate remedy is inadequate. *Id.* at 842. Rather, "[t]he most frequent use we have made of mandamus relief involves cases in which the very act of proceeding to trial—regardless of the outcome—would defeat the substantive right involved." *In re McAllen Med. Ctr., Inc.*, 275

6

S.W.3d 458, 465 (Tex. 2008) (orig. proceeding). The failure to establish either element will defeat a petitioner's request for mandamus relief.

To determine whether the trial court abused its discretion by denying Shire's Rule 91a motion to dismiss, we must first decide whether the trial court was required to grant that motion. To do that, we must identify the type of case Rule 91a was adopted to address and determine whether this case falls within that category. Because no dismissal rule existed prior to the adoption of Rule 91a, we must also determine where Rule 91a fits within the continuum of pretrial procedures in the Texas Rules of Civil Procedure. We begin our analysis by reviewing the history of pleadings challenges leading to the adoption of Rule 91a.[3]

---

[3]As a general rule, "with a few mostly statutory exceptions, . . . an appeal may be taken only from a final judgment," and "[a] judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Supp.). Under this general rule, if a trial court grants a motion to dismiss under Rule 91a that "disposes of all pending parties and claims in the record," an appeal is allowed because the decision is final. *Lehmann*, 39 S.W.3d at 195. On the other hand, if the trial court denies a motion to dismiss under Rule 91a, the case continues. Thus, the denial of a Rule 91a motion to dismiss is not a final, appealable order, and it is not subject to interlocutory appeal under Section 51.014. In addition, "mandamus may not be used as a form of interlocutory appeal." *N.H. Helicopters, Inc. v. Brown*, 841 S.W.2d 424, 425 (Tex. App.—Dallas 1992, orig. proceeding). Yet, mandamus is available to review the denial of a motion to dismiss under Rule 91a. *Essex Ins. Co.*, 450 S.W.3d at 526. This fact creates a potential problem for the judicial system.

On the one hand, an overly broad interpretation of Rule 91a would tax the judicial system by encouraging dismissal motions in cases where dismissal is not clearly warranted thereby increasing the number of mandamus petitions to review the denial of such motions. *See Walker*, 827 S.W.2d at 842 (quoting *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex. 1991) (orig. proceeding)) (noting that "[m]andamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial," that "the delays and expense of mandamus proceedings may be substantial," that "[t]he impact on the appellate courts must also be considered," and that "[t]he judicial system cannot afford immediate review of every discovery sanction" (third alteration in original)). On the other hand, applying too narrow of an interpretation to Rule 91a risks contravening the Legislature's mandate to adopt a rule providing for dismissal. Therefore, we review the history of Rules 90, 91, and 91a and the Texas Supreme Court cases interpreting those rules to determine how the Texas Supreme Court has navigated those two positions.

7

### III. Evolution of Dismissal and Challenges to Pleadings in Texas

#### A. General Demurrers and Special Exceptions

Professor Elaine A. Grafton Carlson explains in the treatise *Texas Civil Practice* that, originally in Texas, a defendant could file a "general demurrer" to the plaintiff's petition. 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, *Texas Civil Practice* § 9.24[b] (2d ed. 2021) (Westlaw). A "general demurrer asserted that 'the plaintiff's petition [was] wholly insufficient in law to state any cause of action against the defendant.'" *Id.* Upon the filing of a general demurrer, "the trial judge was often required to determine . . . whether the defect, on the one hand, was trivial and subject to cure by amendment, or on the other, was fatal because the petition urged a groundless claim that could not be made sufficient in law." *Id.* "The trial judge's decision could be attacked on appeal on any theory that might occur to counsel either before or after the ruling." *Id.*

The Supreme Court adopted Rules 90 and 91 of the Texas Rules of Civil Procedure to end the practice of general demurrers and create instead "a procedure that, without depriving the defendant of the right to challenge the legal sufficiency of the claim, would compel a fair disclosure of the defect asserted." *Id.* Rule 90 states,

> General demurrers shall not be used. Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account; provided that this rule shall not apply as to any party against whom default judgment is rendered.

TEX. R. CIV. P. 90. Rule 91 states, "A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligently and with particularity the defect,

omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." TEX. R. CIV. P. 91.

> As Professor Carlson explains this "special exception" procedure,

> A special exception may challenge the petition as a whole, or a divisible portion of the petition. Where several claims are joined, against the same or several defendants, or where a single claim involves a number of elements of recovery, the sufficiency of any one or more of such claims or elements may be challenged by special exception directed to the part deemed legally insufficient . . . .

> A special exception challenging a claim will be grounded on one or more of three propositions, the applicable one being set out explicitly: (1) that no legal rule justifies a recovery on a claim or defense of the type alleged; (2) that, though there is a legal rule that might be applicable, the petition or answer omits one or more allegations essential to bring the claim or defense within its scope; or (3) that, though there is a legal rule that might be applicable, the petition or answer shows on its face facts negating its application. In addition, any other pleading defect or omission may be urged though the special exception, including that the pleading[] fail[s] to give fair notice, is ambiguous, or is not verified as required.

2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, *Texas Civil Practice* § 9.25[a] (2d ed. 2021) (Westlaw) (footnotes omitted) (citations omitted). Of course, Rules 90 and 91 do not expressly provide for dismissal. Nevertheless, a limited type of dismissal for pleading insufficiency gradually evolved through caselaw interpreting Rules 90 and 91 prior to the adoption of Rule 91a.

Essentially, under that procedure,[4] if the trial court sustains a special exception, the plaintiff must be given an opportunity to replead for the purpose of curing the defect. *Frieshenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). If the plaintiff refuses to replead and "stands" on its pleadings, the trial court will strike the defective allegations. *Cruz v. Morris*, 877

---

[4]As we explain below, Rule 91 was not repealed by the adoption of Rule 91a, but instead was supplemented by that Rule. Accordingly, the dismissal procedure under Rule 91 still exists in certain instances.

S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (citing *Ship Ahoy, Inc. v. Whalen*, 347 S.W.2d 662, 663 (Tex. App.—Houston [1st Dist.] 1961, no writ)). "If the remaining allegations in the petition fail to state a cause of action, then the trial court [will] dismiss the suit." *Id.* (citing *Geochem Lab., Inc. v. Brown & Ruth Lab., Inc.*, 689 S.W.2d 188, 190 (Tex. App.—Houston [1st Dist. 1985, writ ref'd n.r.e.)). If the defect is curable, then dismissal is without prejudice. *Hajdik v. Wingate*, 753 S.W.2d 199, 202 (Tex. App.—Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d 717 (Tex. 1990). If, however, the defect is not curable, dismissal is with prejudice, thereby ending the litigation. *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 386 (Tex. 1991) (dismissal was with prejudice because there was no duty to warn of alcoholism). In addition, where a plaintiff "plead[ed] facts which affirmatively negate[d] his cause of action," a defendant could forgo special exceptions altogether and move for summary judgment on the pleadings. *Tex. Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974). Subject to those limited exceptions, however, dismissal was generally not available in Texas.

## B. Motions to Dismiss Under Rule 91a

In 2011, the Texas Legislature added subsection (g) to Section 22.004 of the Texas Government Code, which states, "The supreme court shall adopt rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence." TEX. GOV'T CODE ANN. § 22.004(g) (Supp.). Pursuant to that Legislative mandate, the Texas Supreme Court adopted Rule 91a, which provides, in part,

> **91a.1. Motion and Grounds.** Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no

basis in law or fact.  A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

> **91a.2.  Contents of Motion.**  A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

TEX. R. CIV. P. 91a.

Nevertheless, the Texas Supreme Court did not repeal or amend Rules 90 and 91.[5]  To the contrary, it appears that Rule 91a was intended to supplement those rules.  Most obviously, the fact that the Texas Supreme Court designated the new rule as 91a suggests a connection between the rules.  Moreover, Rule 91a states that the motion "must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both," which is consistent with both Rules 90 and 91.  *Id.*  Finally, Rule 91a.9 expressly states, "This rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal."  TEX. R. CIV. P. 91a.9.  All of these factors lead to the conclusion that Rule 91a did not repeal the special exception practice under Rules 90 and 91 but supplemented it.

### C.    Texas Supreme Court Cases Granting and Denying Mandamus for the Denial of a Motion to Dismiss Under Rule 91a and the Meaning of the Rule's Standard for Dismissal

Since Rule 91a's adoption, the Texas Supreme Court has issued several opinions granting or denying mandamus relief where trial courts denied motions to dismiss under Rule 91a.  These

---

[5]Nor did it repeal or amend Rule 166a, as we will discuss in more detail below.

opinions clarify what is required to establish that "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."[6]

### 1.    *In re Essex Insurance Co.*, 450 S.W.3d 524 (Tex. 2014)

In *In re Essex Insurance Co.*, the plaintiff, Zuniga, lost his hand during an industrial accident at SDT's facility. *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014) (orig. proceeding). SDT's insurer, Essex, investigated the claim and denied coverage to SDT on the basis that Zuniga was SDT's employee, rather than an independent contractor as Zuniga and SDT claimed. *Id.* Zuniga added Essex as a defendant in his suit against SDT, "seeking a declaration that the policy require[d] Essex to indemnify SDT for its liability to Zuniga." *Id.* The trial court denied Essex's motion to dismiss under Rule 91a, and the court of appeals denied Essex's mandamus petition. *Id.* at 525–26. The Texas Supreme Court granted Essex's petition for a writ of mandamus, finding that, under "the general rule . . . that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment," *Id.* at 525, "Zuniga's claims against [Essex were] barred." *Id.* at 526.

The fact that Zuniga brought his case against Essex under the Declaratory Judgments Act did not change the Texas Supreme Court's analysis; it noted that the no direct action rule was settled law and that Zuniga could not point to "any cases in which [the court had] held that the *plaintiff*, who is not a party to the insurance policy, may seek or obtain a declaratory judgment regarding an insurer's duty to indemnify an insured defendant against liability to the plaintiff before that liability has been determined." *Id.* at 527. It concluded, "Because Texas law does

---

[6]In this opinion, we only address the "no basis in law" element of Rule 91a. We express no opinion regarding the "no basis in fact" element of that rule.

not permit Zuniga to sue Essex directly for a declaration of Essex's duty to indemnify SDT before SDT's liability to Zuniga has been determined, . . . the trial court abused its discretion by denying [Essex's] motion to dismiss Zuniga's claims in [that] case." *Id.* at 527–28. The Texas Supreme Court also held that Essex had no adequate remedy at law via an appeal after final judgment, noting that "mandamus relief is appropriate to 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *Id.* at 528 (quoting *In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 523 (Tex. 2010) (orig. proceeding) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding))).

### 2. *In re Houston Specialty Insurance Co.*, 569 S.W.3d 138 (Tex. 2019)

Next, in *In re Houston Specialty Insurance Co.*, HSIC sued the law firm Thompson, Coe, Cousins, & Irons, LLP (Thompson Coe), for legal malpractice arising from a coverage opinion it issued to HSIC concluding that HSIC had no duty to defend and indemnify its insured, South Central Coal Company (the Coal Company) in the underlying litigation. *In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 139 (Tex. 2019) (per curiam) (orig. proceeding). After HSIC denied coverage and a defense, the Coal Company sued HSIC and ultimately obtained a settlement whereby HSIC paid $2.8 million to the Coal Company. *Id.* Afterward, "HSIC accused Thompson Coe of committing legal malpractice during its representation of HSIC" in the underlying lawsuit and sought recovery of the money it had paid to settle the claim. *Id.*

Thompson Coe responded by filing suit against HSIC seeking a declaratory judgment that, among other things, it did not commit legal malpractice. *Id.* HSIC then sued Thompson Coe for malpractice in a different court and moved the original trial court to dismiss Thompson

13

Coe's declaratory judgment action, arguing that "the suit violate[d] the rule of *Abor v. Black*, 695 S.W.2d 564 (Tex. 1985) (orig. proceeding), that a potential tort defendant may not use the [Declaratory Judgment Act] to obtain a declaration of nonliability in tort." *Id.* The trial court denied the motion to dismiss, but the Texas Supreme Court granted mandamus, holding that "each of Thompson Coe's requested declarations [were] aimed at establishing a defense to a potential legal malpractice claim by HSIC. Under *Abor*, they are legally invalid, have 'no basis in law,' and should have been dismissed." *Id.* at 141 (quoting TEX. R. CIV. P. 91a.1). The Texas Supreme Court reiterated its prior holding in *Essex* that "mandamus relief is appropriate to 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *Id.* at 141–42 (quoting *In re Essex Ins. Co.*, 450 S.W.3d at 528).

### 3. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651 (Tex. 2020)

Then, in *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, the plaintiff in a wrongful death suit against a trailer manufacturer filed suit against the trailer manufacturer's law firm alleging, "among other things, fraud, trespass to chattel, and conversion." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 653, 654 (Tex. 2020). The basis of the underlying wrongful death suit was Bethel's claim "that the trailer's faulty brakes caused the accident" in which her husband was killed. *Id.* at 653. Against Quilling, Bethel alleged that "Quilling intentionally destroyed key evidence in the case by disassembling and testing the trailer's brakes before Bethel had the opportunity to either examine them or document their original condition." *Id.* at 654. Quilling alleged the affirmative defense of

14

attorney immunity and moved for dismissal under Rule 91a.  *Id.*  The trial court granted the motion, and the court of appeals affirmed.  *Id.*

The Texas Supreme Court affirmed the lower courts' rulings, first holding that "an affirmative defense may be the basis of a Rule 91a motion to dismiss."  *Id.* at 653.[7]  Turning to the merits of Quilling's motion to dismiss, the Texas Supreme Court held that "Quilling's complained-of-actions are the kind of actions that are 'taken in connection with representing a client in litigation.'"  *Id.* at 658 (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)).  While it admitted that a different result might ensue if the petition alleged different facts, the Texas Supreme Court concluded—based on the allegations in the petition—that Bethel's claims against Quilling were barred by attorney immunity.  *Id.*

### 4. *In re Farmers Texas County Mutual Insurance Co.*, 621 S.W.3d 261 (Tex. 2021)

Finally, on April 23 of this year, the Texas Supreme Court handed down its opinion in *In re Farmers Texas County Mutual Insurance Co.*, 621 S.W.3d 261 (Tex. 2021) (orig. proceeding). In that case, "Gary Gibson sued [Farmers' insured] Cassandra Longoria for damages he sustained in an automobile accident when Longoria rear-ended his vehicle."  *Id.* at 265.  At a mediation, "the mediator proposed that the case settle for $350,000," and "[a]fter mediation,

---

[7]Although the Texas Supreme Court noted that Rule 91a.6 states that "the court may not consider *evidence* in ruling on the motion and must decide the motion based solely on the pleading of its cause of action," *Quilling*, 565 S.W.3d at 654 (citing TEX. R. CIV. P. 91a.6), it held that the rule "does not limit the scope of the court's legal inquiry in the same way."  *Id.* at 655.  It then noted that "[f]orcing parties to conduct discovery when the claimant's allegations conclusively establish the existence of an affirmative defense would be a significant waste of time and private resources," contrary to the mandates of Rule 1 of the Rules of Civil Procedure. *Id.* at 656; *see* TEX. R. CIV. P. 1 ("To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.").  It concluded that, notwithstanding the language of Rule 91a.7, the trial court can look at the defendant's answer to determine if the affirmative defense was properly before the trial court; if so, then the trial court would look solely to the petition to determine whether that affirmative defense barred relief pursuant to Rule 91a.6.  *Id.*

Gibson notified Farmers that he would accept the mediator's proposal." *Id.* Farmers offered $250,000 in response to Gibson's offer. *Id.* Longoria alleged that "Farmers 'suggested' or 'ma[de] a demand' that she 'contribute the additional $100,000 necessary to secure a release.'" *Id.* (alteration in original). Subsequently, "Gibson rejected Farmers' $250,000 settlement offer and withdrew his own settlement offer, advising that he would [instead] seek $2 million in damages." *Id.*

However, "[b]efore trial, Longoria's personal counsel reopened settlement negotiations. . . . After Farmers again refused to contribute more than $250,000, Longoria offered to pay the additional $100,000 without waiving her right to seek recovery of that payment from Farmers." *Id.* The case settled, and Gibson released Longoria in exchange for the total payment of $350,000. *Id.* Longoria then sued Farmers "for negligent failure to settle" under the authority of *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n. App. 1929, holding approved), and she subsequently amended her petition to assert a claim for breach of the insurance contract's "obligation to defend Longoria against Gibson's suit by failing to designate expert witnesses on time" and a claim for breach of the insurance contract's indemnity obligation.[8] *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 265, 268. Farmers moved to dismiss the petition under Rule 91a. *Id.* at 264. The trial court denied relief, and the court of appeals granted Farmers' petition for a writ of mandamus regarding Longoria's breach of contract claim but denied mandamus relief regarding her *Stowers* claim. *Id.*

---

[8]Specifically, Longoria alleged that Farmers breached "its obligation to pay a settlement within policy limits when it chose to settle without exhausting coverage or securing a release for Longoria, demanding instead that she contribute personal funds to the settlement because she was partially liable for an uncovered claim." *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 268–69.

16

The Texas Supreme Court granted Farmers' petition for a writ of mandamus regarding Longoria's *Stowers* claim, holding that *Stowers* liability attaches only when "the insurer's negligent failure to settle results in an *excess judgment against the insured*." *Id.* at 267 (quoting *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (citing *G.A. Stowers Furniture Co.*, 15 S.W.2d at 544)). Because the settlement made it impossible that Gibson would ever obtain an excess judgment against Longoria, a *Stowers* claim was barred. *Id.* at 268.[9] The Texas Supreme Court also ruled that Longoria's claim for breach of the insurance contract's duty to defend provision was barred, noting that Longoria "s[ought] to hold Farmers liable because the attorney it provided for her failed to secure and timely designate experts to testify in her favor," that "a liability insurer is not vicariously responsible for the conduct of an independent attorney it selects to defend an insured," *id.* at 269 (quoting *State Farm Mut. Auto Ins. Co. v. Traver*, 980 S.W.2d 625, 628 (Tex. 1998)), and that Longoria "identifi[ed] no pleaded facts that [took] her claim outside this legal rule," *id.*

However, the Texas Supreme Court granted mandamus to reverse the dismissal of Longoria's claim for breach of the insurance contract's duty to indemnify. It noted that Longoria quoted the following language from her insurance policy in her petition: "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." *Id.* The Texas Supreme Court then noted that the law was clear

---

[9]The Texas Supreme Court held,

> In sum, our precedent has consistently recognized a *Stowers* cause of action only when the insured's liability exceeds policy limits. Longoria's claim for Farmers' negligent failure to settle within policy limits has no basis in law because her "allegations, taken as true, . . . do not entitle [her] to the relief sought" under *Stowers*. *See* TEX. R. CIV. P. 96a.1. We hold that the trial court abused its discretion by denying Farmers' motion to dismiss that claim.

*In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 268.

that "[a] court judgment against an insured is not the only manner by which an insured can become legally obligated to pay a claim; a legal obligation can also arise out of a contract such as a settlement." *Id.* at 270 (quoting 46 TEX. JUR. 3D INSURANCE CONTRACTS & COVERAGE § 893). The Texas Supreme Court held that "[b]ecause Texas courts recognize that an insured can become legally responsible due to a settlement, Longoria [had] alleged facts that trigger[ed] Farmers' payment obligation under the plain language of [that] policy provision." *Id.*

Significantly, in response to the dissenting opinion's position that Farmers was not liable under other provisions of the policy not alleged in the petition, the majority hinted that such arguments might be appropriate for a motion for summary judgment, but they did not require dismissal under Rule 91a. *Id.* at 276. The Supreme Court concluded,

> [O]ur holding is limited to the scope of Farmers' Rule 91a motion and clarifies a narrow issue: *Stowers* and the other principles of Texas insurance law cited by Farmers do not foreclose as a matter of law a claim for breach of contract against an insurer regarding its indemnity obligation. Thus, the trial court properly denied Farmers' Rule 91a motion to dismiss Longoria's cause of action for breach of the contractual obligation to indemnify, and the court of appeals erred in concluding otherwise.

*Id.*

### 5.     Summary of the Texas Supreme Court's Rule 91a Cases

The rulings in these Texas Supreme Court cases reveal a pattern that is consistent with the prior procedure for raising pleading defects under Rules 90 and 91. Namely, to establish that "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought," the defendant must establish that the plaintiff's claims are "foreclose[d] as a matter of law" because either (1) the causes of action in the petition are not recognized by Texas law or (2) the causes of action are recognized, but the plaintiff has alleged

18

facts that defeat those claims under settled law (i.e., the plaintiff has pleaded itself out of court). *Id.* Thus, in *In re Essex Insurance Co.* and in *In re Houston Specialty Insurance Co.*, the prior settled law barred the precise claims asserted by the plaintiffs. In *Essex*, the Supreme Court held that "Texas law [did] not permit Zuniga to sue Essex directly for a declaration of Essex's duty to indemnify SDT before SDT's liability to Zuniga [had] been determined." *In re Essex Ins. Co.*, 450 S.W.3d at 527. In *In re Houston Specialty Insurance Co.*, the law prohibited a defendant from filing a declaratory judgment action seeking a declaration of non-liability. *In re Houston Specialty Ins. Co.*, 569 S.W.3d at 141.

And, in *Quilling* and *In re Farmers Insurance Co.*, a claim of the type alleged was possible under Texas law, but the plaintiffs pleaded themselves out of court. While the plaintiffs' claims in *Quilling* were recognized by Texas law, the law also provides attorneys with immunity from suit for "actions that are 'taken in connection with representing a client in litigation,'" and the plaintiffs' claims alleged that exact type of liability. *Quilling*, 595 S.W.3d at 658 (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). Also, plaintiff's *Stowers* claim in *In re Farmers Insurance Co.* was recognized by Texas law, but liability could not occur under the *Stowers* doctrine because the parties' settlement in the underlying litigation eliminated the possibility of an excess judgment against the plaintiff, *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 275; likewise, Texas law recognizes a claim for breach of the insurance contract's duty to defend, but the plaintiff could not prevail in the face of precedent holding that a liability insurer cannot be vicariously liable for the actions of an independent attorney retained to defend the insured, *id.* at 269. On the other hand, in *In re Farmers Insurance Co.*, the Texas Supreme Court held that Rule 91a did not require dismissal of the plaintiff's

19

breach of the insurance contract claim because prior law had not foreclosed recovery under the policy provision cited by the plaintiff in her petition. *Id.* at 276 ("*Stowers* and the other principles of Texas insurance law cited by Farmers do not foreclose as a matter of law a claim for breach of contract against an insurer regarding its indemnity obligation."). Although the Texas Supreme Court hinted that the question might ultimately be resolved in favor of the defendant on summary judgment, Farmers was not entitled to dismissal under Rule 91a. *Id.* at 277.

In short, in every case in which the Supreme Court has found that dismissal was required by Rule 91a, the plaintiff's recovery on his or her claims was foreclosed as a matter of law, whereas, in the case in which it found that dismissal was not required, the plaintiff's recovery was not foreclosed as a matter of law. Thus, it is clear that the Texas Supreme Court has interpreted Rule 91a's "no basis in law" standard to mean that the plaintiff's recovery on its claims must be foreclosed as a matter of law in order to merit dismissal under that rule.

The Supreme Court's use of the term foreclose is instructive: the term foreclose is defined as "to shut out: PRECLUDE." *Foreclose*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). The term "preclude" is defined as "to make impossible by necessary consequence: rule out in advance." *Preclude*, WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006). Consequently, the reasoning in those Supreme Court cases establishes that to demonstrate that "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought," the defendant must show that recovery on the claims in the plaintiff's petition is foreclosed (i.e., that the plaintiff's recovery is impossible by necessary consequence of the law) because either (1) the causes of action in the petition are not recognized

20

by Texas law or (2) the plaintiff has alleged facts that defeat those causes of action under settled law (i.e., the plaintiff has pleaded itself out of court). In other words, a claim is foreclosed as a matter of law where recovery by the plaintiff is legally impossible.

Moreover, the Texas Supreme Court's interpretation of the "no basis in law" standard to mean that the claim is foreclosed as a matter of law—i.e., that recovery is legally impossible—is consistent with the language of the rule itself: "a party may move to dismiss a cause of action on the grounds that it has *no* basis in law or fact." TEX. R. CIV. P. 91a.1 (emphasis added). Stated another way, Rule 91a requires a showing that there is "*no* basis in law or fact" rather than merely "*no reasonable* basis in law or fact" or "*no meritorious* basis in law or fact."[10] It is also consistent with the policy reasons behind the rule: when it is legally impossible for the plaintiff to recover on the claims in the petition, it is unjust to require the defendant to expend the time and money "enduring eventual reversal of improperly conducted proceedings." *In re Essex Ins. Co.*, 450 S.W.3d at 528. Therefore, to establish that a cause of action has "no basis in law" because "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought," *id.*, the defendant must demonstrate that recovery by the plaintiff is foreclosed as a matter of law—i.e., that it is legally impossible for the plaintiff to recover on the claims in its petition—because either (1) the causes of action in the petition are not recognized by Texas law or (2) the plaintiff has alleged facts that defeat those causes of action under settled law (i.e., the plaintiff has pleaded itself out of court).

---

[10]If there were any doubt about the standard, the Texas Supreme Court eliminated it in *Essex*, where it held, "Because Texas law *does not permit* Zuniga to sue Essex directly . . . the trial court abused its discretion by denying [Essex's] motion to dismiss Zuniga's claims . . . ," *In re Essex Ins. Co.*, 450 S.W.3d at 527–28 (emphasis added); whereas, in *In re Farmers Insurance Co.*, it rejected dismissal of the plaintiff's breach of the insurance contract claim "[b]ecause Texas courts recognize that an insured *can* become legally responsible due to a settlement," *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 270 (emphasis added).

**IV.**   **How Does Rule 91a Comport with Rules 90, 91, and 166a and Compare to Rule 12(b)(6) of the Federal Rules of Civil Procedure?**

**A.**   **Summary Judgment Under Rule 166a**

Shire argues that HCA's claims have no basis in law because they are barred by TMFPA's public disclosure bar as a matter of law and because—based on federal authorities interpreting a similar federal statute—the schemes at issue are not kickbacks under the TMFPA as a matter of law. Accordingly, we must also determine how Rule 91a's "no basis in law or fact" standard compares to Rule 166a's "judgment as a matter of law" standard. TEX. R. CIV. P. 166a(c).

The Texas summary judgment procedure under Rule 166a is well established:

> To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993).

> The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). However, once the movant establishes it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In reviewing a summary judgment, we accept all of the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum*, 941 S.W.2d at 911. All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996).

22

*Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 68 (Tex. App.—Texarkana 2002, pet. denied).[11]

Technically, whenever a claim has no basis in law under Rule 91a, then the defendant is entitled to dismissal and dismissal of the action would be a judgment in the defendant's favor "as a matter of law." However, under the reasoning of the Texas Supreme Court's mandamus cases, the reverse is not also true. That is, when a defendant is entitled to judgment as a matter of law under Rule 166a, it does not necessarily follow that he also would have been entitled to dismissal under Rule 91a. As noted above, equating the two standards would effectively convert Rule 91a into a pre-discovery motion for summary judgment for which there is immediate review via mandamus whenever a trial court denies such a motion even though no such review is permitted for the denial of a motion for summary judgment.[12] This would create the negative impact on the judicial system resulting from excessive mandamus petitions that the Supreme Court warned against in *Walker*.[13]

However, the Texas Supreme Court has not interpreted Rule 91a that broadly. Rather, under its reasoning in *In re Essex*, *In re Houston Specialty Insurance Co.*, *Quilling*, and *In re Farmers Insurance Co.*,[14] if the defendant cannot demonstrate that the plaintiff's recovery on the

---

[11]Although Rule 166a also permits no evidence summary judgments, the first requirement for obtaining such relief is that "adequate time for discovery" has elapsed. TEX. R. CIV. P. 166a(i). Because a motion to dismiss under Rule 91a takes place prior to discovery, the provisions of the no-evidence summary judgment are not comparable.

[12]Not only is there typically no right to interlocutory appeal when a trial court denies a motion for summary judgment under Rule 166a—and concomitantly, no right to mandamus relief—even federal Rule 12(b)(6) does not allow such review for the denial of a motion to dismiss under that federal rule. Thus, equating the summary judgment "judgment as a matter of law" standard with Rule 91a's "no basis in law or fact" standard would create a pre-discovery dismissal rule with immediate review by mandamus far beyond any other Texas or federal rule.

[13]*See supra* note 3.

[14]In *Herring*, the Texas Supreme Court discussed the interplay between dismissal under Rule 91 and motions for summary judgment prior to the adoption of Rule 91a. *Herring*, 513 S.W.2d at 9–10. Review of this case helps

23

claim in its petition are foreclosed as a matter of law, then it may still move for summary

judgment, but it is not entitled to dismissal under Rule 91a.[15]

---

explain how Rule 91a changed the special exception practice under Rules 90 and 91 and how dismissal under Rule 91a compares to summary judgments under Rule 166a.

In that case, Herring, an inmate of the Texas Department of Corrections, suffered an injury to his face during a basketball game. *Id.* at 7. He "lost all vision in his right eye" after undergoing treatment "at the prison hospital and later at The University of Texas Medical Branch Hospital in Galveston." *Id.* Herring sued the Department under the Texas Tort Claims Act, alleging "only a general allegation of negligence which was 'negligence in failing to provide adequate medical care and treatment.'" *Id.* The Department moved to strike Herring's interrogatories and moved for summary judgment on the pleadings, arguing that Herring had failed to plead a claim within the Tort Claims Act. *Id.* at 9. The trial court granted summary judgment, and the Texas Supreme Court reversed, holding,

> This court agrees that Herring's pleadings failed to state a cause of action since no "use of tangible property" was alleged as required by the Texas Tort Claims Act.
>
> However, the question to be resolved is whether Herring, under the instant circumstances, may be denied the opportunity to amend his pleadings because they were attacked via a summary judgment motion instead of a special exception. It is recognized that a party may plead himself out of court; E.g., the plaintiff may plead facts which affirmatively negate his cause of action. In such instance[,] it is proper to grant the defendant's motion for summary judgment. . . .
>
> Had the Department of Corrections filed special exceptions which were sustained by the court, Herring would have had an opportunity to amend as a matter of right. But only after a party has been given an opportunity to amend after special exceptions have been sustained may the case be dismissed for failure to state a cause of action.
>
>        . . . .
>
> This court believes that the protective features of special exception procedure should not be circumvented by a motion for summary judgment on the pleadings where plaintiff's pleadings, as here, fail to state a cause of action. To do so would revive the general demurrer discarded by Rule 90, Texas Rules of Civil Procedure.

*Id.* at 9–10 (citations omitted). Therefore, what has changed under Rule 91a is that, when a plaintiff pleads himself out of court—either by alleging facts that negate his recovery or by asserting legal theories that are barred by settled law—the defendant is no longer required to move for summary judgment on the pleadings but may move for dismissal under Rule 91a. But an objection that a petition "fails to state a claim" is still a general demurrer prohibited by Rule 90, and before a petition may be dismissed on that basis, the defendant must specially except under Rule 91, and the plaintiff must be given an opportunity to replead before dismissal may be ordered. TEX. R. CIV. P. 90, 91.

[15]The fact that Rule 166a requires the movant to establish—based on the summary judgment evidence—that there is no genuine issue of material fact, whereas Rule 91a prohibits the court from looking outside the pleadings to determine if there is "no basis in law" for the plaintiff's claims, highlights a key distinction between a motion for summary judgment and a motion to dismiss. To obtain summary judgment, the movant must show the court that— *based on the case evidence*—he is entitled to judgment as a matter of law. To obtain dismissal, the movant must show that—*regardless of the case evidence*—recovery by the plaintiff is foreclosed. Rule 91a's prohibition against looking outside the pleadings to determine whether the plaintiff's claims have "no basis in law" is more than a mere procedural distinction; rather, it is a substantive distinction because recovery by the plaintiff on the claims alleged in the petition is either foreclosed or it is not—regardless of the evidence. Accordingly, if the trial court cannot determine whether recovery is foreclosed without looking outside the pleadings, then summary judgment may be available, but dismissal is not.

**B.** **Comparison of Rule 91a to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

We also note that some appellate courts have concluded that we may look to federal cases interpreting Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance in interpreting Rule 91a. *See GoDaddy.com v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied) ("While not identical, Rule 91a is analogous to Rule 12(b)(6); therefore, we find case law interpreting Rule 12(b)(6) instructive."); *but see In re Butt*, 495 S.W.3d 455, 461 (Tex. App.—Corpus Christi 2016, orig. proceeding) ("We note, however, that the federal rules are based on a more stringent pleading standard than the Texas rules, and Rule 91a did not revoke Texas's established 'fair notice' pleading standard."). Shire cites to federal dismissal cases in support of the arguments in its mandamus petition. Thus, we must consider how federal Rule 12(b)(6) compares to Rule 91a.

---

This distinction is most apparent in *In re Farmers*, where the plaintiff's breach of the insurance contract's duty to defend claims were foreclosed, but her claim for breach of the insurance contract's duty to indemnify was not. *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d at 276. By contrast, Texas law did not foreclose recovery on her claim for breach of the insurance contract's indemnity obligation where recovery on that claim would ultimately depend on what the evidence showed:

> We do not disagree with the dissent's point that the duty to indemnify "depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). But those facts are not required to be proven in an underlying trial against the insured and are often proven in coverage litigation." *Id.* "This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence," as was the case in *D.R. Horton* and is the case here. *See id.* The dissent faults us for not explaining *when* a settlement triggers an insurer's duty to indemnify. But as with the duty to indemnify generally, that will depend on the evidence—which we do not have at this early stage of the case.
> . . . .
> We do not determine today what the policy as a whole required, whether Farmers breached it by consenting to settle within the policy limits but making the insured's release contingent on her contribution, or whether Longoria can prove damages. Rather, our holding is limited to the scope of Farmers' Rule 91a motion and clarifies a narrow issue: *Stowers* and the other principles of Texas insurance law cited by Farmers do not foreclose as a matter of law a claim for breach of contract against an insurer regarding its indemnity obligation.

*Id.* Thus, a simple litmus test for distinguishing the two procedures is to ask whether the motion can be resolved without looking to the evidence. If not, then it is an issue for summary judgment, not dismissal.

Federal Rule 12(b)(6) states, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). In *Health Choice Group, LLC v. Bayer Corp.*, in which HCA asserted essentially the same claims raised in this case under the TMFPA as claims under the federal FCA against a different defendant, United States Magistrate Judge Caroline Craven stated the standard of review applicable to motions to dismiss under Rule 12(b)(6):

> Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

> To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not ["]shown["]—["]that the pleader is entitled to relief."'" *Id.*

*Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381, at *4 (E.D. Tex. June 29, 2018), *report and recommendation adopted*, No. 5:17-CV-126-RWS-CMC, 2018 WL 3630042 (E.D. Tex. July 31, 2018). Although the procedure involved is somewhat similar to the dismissal procedure under Rule 91 prior to the adoption of Rule 91a, the dismissal standards under Rules 12(b)(6) and 91a are significantly different.

26

Specifically, dismissal under Rule 12(b)(6) is permitted when it is implausible on the face of the pleadings that the plaintiff will recover on its claims, whereas to be entitled to dismissal under Rule 91a, a movant must establish that recovery is foreclosed, i.e., that it is legally impossible on the face of the pleadings for the plaintiff to recover on those claims. Logically, if it is legally impossible on the face of the pleadings for the plaintiff to recover on its claims, then the claims are facially implausible. But even if a claim is facially implausible, it can still be possible for the plaintiff to recover. In *Ashcroft v. Iqbal*, the United States Supreme Court acknowledged this distinction when it defined Rule 12(b)(6)'s implausibility standard:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to the relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted).[16] Consequently, the cases interpreting Rule 12(b)(6) under the implausibility standard adopted in *Twombly* and *Iqbal* are inapposite to Rule 91a[17] and do not affect our analysis.

---

[16]The United States Supreme Court first adopted the implausibility standard of review under federal Rule 12(b)(6) in a Sherman Anti-Trust case, *Bell Atlantic Corp. v. Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[17]Other differences exist as well; for one thing—Rule 12(b)(6) is stated negatively—dismissal is required when the complaint "fail[s] to state a claim upon which relief can be granted"—whereas, Rule 91a is stated affirmatively— dismissal is required only where "the allegations, taken as true, together with inferences reasonably drawn from them, *do not entitle the claimant to the relief sought*." TEX. R. CIV. P. 91a.1 (emphasis added). Thus, the language of Rule 12(b)(6) suggests that dismissal is proper when the plaintiff fails to plead enough facts to show he is entitled to recover, whereas Rule 91a suggests that dismissal is proper when the plaintiff affirmatively pleads facts or legal theories that negate his right to recover. Essentially, under Rule 12(b)(6), a plaintiff must establish that his claims are plausible, and under Rule 91a, the defendant must establish that there is no basis in law or fact for the claims. In addition, the Texas Supreme Court has held that a rule allowing for summary judgment on the pleadings based on a failure to state a cause of action without requiring the defendant to specially except to the petition is a general demurrer that is prohibited by Rule 90. *Herring*, 513 S.W.2d at 10. The fact that the Texas Supreme Court did not repeal Rule 90 when it enacted Rule 91a means that Rule 91a is not a general demurrer and cannot be interpreted in

27

On the other hand, cases interpretation Rule 12(b)(6) under the pleading standard existing prior to *Twombly* and *Iqbal* are instructive. *See Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 611 (Tex. App.—Corpus Christi 2017, no pet.). In *Reaves*, the Corpus Christi Court of Appeals noted that the standard existing prior to *Twombly* and *Iqbal*—established in the Supreme Court case of *Conley v. Gibson*—"did not authorize dismissal of a pleading 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Corpus Christi court continued,

> The text of rule 91a states that a "cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Thus, the language mirrors one formulation of the 12(b)(6) test that was issued before *Twombly*: a "complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief."

*Id.* (citation omitted). The Corpus Christi Court then concluded,

> It should be no surprise, then, that the forms of dismissal which have appeared in early Texas cases under rule 91a have mirrored an important line of pre-*Twombly* federal 12(b)(6) cases. Perhaps the purest application of the *Conley* "no set of facts" test is where a plaintiff "plead[s] himself out of court by alleging facts that render success on the merits impossible." Under this line of cases, a petition may warrant dismissal for failure to state a claim under rule 12(b)(6) when "the allegations, for example, show that relief is barred[.]" In the same vein, a federal case may be dismissed when the petition alleges a claim that is not cognizable under federal law.

*Id.* at 612 (citations omitted). We agree with the reasoning of the Corpus Christi Court of Appeals in *Reaves* that the pleading standard under Rule 91a mirrors the "no set of facts"

---

that manner. Because Rule 12(b)(6) would allow dismissal for failure to state a claim upon which relief may be granted, the reasoning in *Herring* suggests that Rule 12(b)(6) is a general demurrer prohibited by Rule 90.

pleading standard existing under *Conley* prior to *Twombly* and *Iqbal*. Thus, a claim has "no basis in law" "where a plaintiff 'plead[s] himself out of court by alleging facts that render success on the merits impossible" or where "the petition alleges a claim that is not cognizable under federal law." *Id.*

## V. When is Mandamus Required to Correct a Trial Court's Denial of a Rule 91a Motion to Dismiss in Light of Rules 90, 91, and 166a and the Prior Texas Supreme Court Opinions Under Rule 91a?

In summary, then, Rule 91a establishes a dismissal procedure that falls between the special exception procedure under Rules 90 and 91 and summary judgment procedure under Rule 166a. Moreover, the "no basis in law" standard for dismissal under Rule 91a as interpreted by the Texas Supreme Court—which requires the movant to establish that, on the face of the pleadings, recovery by the plaintiff is foreclosed as a matter of law (i.e., that recovery is legally impossible)—differs from the current "failure to state a claim upon which relief may be granted" standard under federal Rule 12(b)(6), which only requires a showing that the claimant's causes of action are facially implausible. FED. R. CIV. P. 12(b)(6); TEX. R. CIV. P. 91a. We must now determine when mandamus is required to correct a trial court's denial of a Rule 91a motion to dismiss. Having reviewed the history of dismissals in Texas prior to Rule 91a, the language of Rule 91a, the standard of review under Rule 166a, the standard of review under federal Rule 12(b)(6), and the Texas Supreme Court cases considering mandamus to review a trial court's denial of a motion to dismiss under Rule 91a, certain principles can be discerned regarding Rule 91a motions to dismiss and mandamus petitions reviewing the denial of such motions. To

explain these principles, we return to the three types of pleading challenges existing under Rule 91 prior to the adoption of Rule 91a as identified by Professor Carlson.[18]

To begin with, with respect to Professor Carlson's second category of pleading challenge, Rule 91a requires more than an allegation that the petition does not contain enough information to state a claim for relief; instead, Rule 91a requires a showing that the allegations in the petition affirmatively "do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. Thus, a defendant cannot obtain dismissal under Rule 91a on the pleadings where the defendant merely alleges that the petition omits one or more allegations necessary to state the claim because this type of defect does not render recovery on that claim legally impossible. Rather, with this type of pleadings challenge, the defendant must specially except to the pleadings and move the trial court to require the plaintiff to replead to add the missing information. If the trial court sustains the special exceptions and the plaintiff fails to replead, the action may be dismissed. But dismissal under this instance will be under Rule 91 and the procedure discussed in *Herring*, not Rule 91a.[19]

---

[18]As noted, Professor Carlson explained,

> A special exception challenging a claim will be grounded on one or more of three propositions, the applicable one being set out explicitly: (1) that no legal rule justifies a recovery on a claim or defense of the type alleged; (2) that, though there is a legal rule that might be applicable, the petition or answer omits one or more allegations essential to bring the claim or defense within its scope; or (3) that, though there is a legal rule that might be applicable, the petition or answer shows on its face facts negating its application.

2 MCDONALD & CARLSON, *Texas Civil Practice* § 9.25[a].

[19]The Houston First Court of Appeals has noted that several Texas "[c]ourts have concluded that a cause of action has no basis in law under Rule 91a [where] the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief." *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.— San Antonio Dec. 31, 2104, no pet.); *Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 WL 6493411, at *1 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op.)). In *Reaves*, the Corpus Christi Court of Appeals stated, "[W]e agree with the general substance of this observation—that inadequate content may justify dismissal of a petition—but we disagree to the extent it implies that notice-pleading is no longer the rule in Texas." *Reaves*, 518

Second, where there is no legal rule justifying a recovery on the claim of that type—Professor Carlson's first category of pleading challenge—the defendant is no longer required to specially except to the pleadings and give the plaintiff an opportunity to replead before seeking dismissal as it was under the law prior to Rule 91a but can now move immediately for dismissal on the pleadings. And last, where the plaintiff has pleaded facts that affirmatively negate his cause of action—Professor Carlson's third category of pleading challenge—the defendant is no longer required to move for summary judgment on the pleadings but may now move for dismissal on the pleadings themselves. Yet, when moving to dismiss based on either of these

S.W.3d at 608. Thus, the Corpus Christi Court concluded, "[I]n light of the fair-notice standard, we would qualify the holding of *Guillory*: dismissal is appropriate where the plaintiff fails to provide fair notice of a legally cognizable claim for relief." *Id.* While we agree with the Corpus Christi Court's analysis in *Reaves*, we believe it requires further clarification.

The *Reaves* formulation of the standard can be interpreted in two ways. On the one hand, it could be interpreted as holding that a petition "fails to give fair notice of a cognizable claim"—even where it alleges a type of claim that is cognizable under Texas law—because the petition fails to state enough detail to provide the defendant with fair notice of the facts upon which the claim is based. On the other hand, it could be interpreted as holding that a petition "fails to give fair notice of a cognizable claim"—regardless of the degree of detail alleged—because the claim itself is not cognizable under Texas law. The first interpretation is inconsistent with the fair notice pleading standard. In *Roark v. Allen*, the Texas Supreme Court explained that under the fair notice standard,

> When there are no special exceptions, a petition will be construed liberally in favor of the pleader. Also, "[t]he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically stated. Every fact will be supplied that can reasonably be inferred from what is specifically stated." A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense.

*Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982) (citing *Gulf, Colorado & Santa Fe Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex. 1963)).

Therefore, although dismissal can be appropriate under both interpretations of the *Reaves* standard, dismissal under the first interpretation must be sought under Rule 91 after the plaintiff has been given an opportunity to replead. To hold otherwise would resurrect the general demurrer prohibited by Rule 90. *See Herring*, 513 S.W.2d at 9–10 (holding that while the petition "failed to state a cause of action since no 'use of tangible property' was alleged as required by the Texas Tort Claims Act," the pleading must be challenged by special exception and the defendant given an opportunity to replead because to do otherwise "would revive the general demurrer discarded by Rule 90"); *see also* 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, *Texas Civil Practice* § 9.24[b] (2d. ed. 2021) (a "general demurrer asserted that 'the plaintiff's petition [was] wholly insufficient in law to state any cause of action against the defendant'"). Consequently, while we agree with the statement in *Reaves*, we would further qualify that standard to say that "dismissal is appropriate [under Rule 91a] where the plaintiff fails to provide fair notice of a legally cognizable claim for relief" because the claim alleged is not cognizable under Texas law, but dismissal is not available under Rule 91a where the petition merely fails to state enough detail regarding the facts upon which the claim is based.

31

two bases, it is not enough for the defendant to show that he is entitled to judgment as a matter of law based on an application of general legal principles to the facts. Rather, the defendant must show that the plaintiff's recovery is foreclosed as a matter of law.

Moreover, because recovery is either foreclosed as a matter of law or it is not, and because a trial court has no discretion to incorrectly "analyze or apply the law," *Walker*, 827 S.W.2d at 840, then the trial court has no discretion to deny a Rule 91a motion to dismiss when the plaintiff's recovery on its claims is foreclosed as a matter of law. And because an incorrect denial of a Rule 91a motion to dismiss would expose the defendant to the time and resources necessary to defend a claim that can only end in a defense verdict, a defendant will never have an adequate remedy at law where dismissal was improperly denied. Therefore, by interpreting Rule 91a's "no basis in law" standard to mean that the plaintiff's recovery is foreclosed as a matter of law (i.e., legally impossible), the Texas Supreme Court effectively eliminated a trial court's discretion to deny dismissal under Rule 91a where recovery by the plaintiff is legally impossible. Consequently, resolution of a petition for a writ of mandamus to review the denial of a Rule 91a motion to dismiss turns on whether the defendant established that it is legally impossible for the plaintiff to recover on the claims in its petition. If so, then mandamus should be granted to correct that ruling; if not, then mandamus should be denied.

Finally, we note that, in each of the Texas Supreme Court cases under Rule 91a, the legal principles precluding the plaintiffs' recovery were settled: *In re Essex* involved the "no direct action" rule, *In re Houston Specialty Insurance Co.* involved the prohibition against declarations of nonliability in tort, *Quilling* involved the principle of attorney immunity, and *In re Farmers* involved the *Stowers* requirement of a judgment in excess of policy limits and the rule negating

32

an insurer's vicarious liability for the actions of independent counsel retained to defend the insured. Thus, the Supreme Court's Rule 91a cases also suggest that the law must be "settled" before it can be said that recovery by the plaintiff is legally impossible.

Logic compels this conclusion; one cannot say that a claim is foreclosed as a matter of law if the claim still has some support in Texas law. Thus, the law foreclosing the claim must be settled. The question follows, then, to what extent must the law be settled in order to establish that it is legally impossible for the plaintiff to recover on the claims in its petition? Clearly, binding precedent from the Texas Supreme Court on the precise facts presented in the case at hand would establish legal impossibility. However, it is conceivable that a question of law could be unsettled in the sense that it has not been addressed by the Texas Supreme Court, but there could also be only one reasonable result to be reached in deciding that question. For example, if a statute or a contract expressly negated the plaintiff's cause of action, it is arguably unreasonable to interpret the statute or contract as allowing recovery simply because the Texas Supreme Court has not yet decided that question. Nevertheless, we do not attempt to define how settled the law must be to merit dismissal under Rule 91a. Rather, we merely hold that Shire is not entitled to mandamus relief in this case because the law it relies upon is clearly not settled by any standard.

## V. Application to the Present Case

### A. Introduction

In this case, Shire raises all three types of pleading defects identified above in its mandamus petition. First, it argues that HCA's claims are barred by the public disclosure bar of the TMFPA. Second, it argues that HCA's claims are not kickbacks under the TMFPA as a

matter of law based on federal authorities interpreting a similar federal statute. Finally, it alleges that HCA's petition is inadequate as a matter of law because HCA failed to allege scienter as required by the TMFPA. Shire relies on three sources of legal authority to support its arguments: (1) federal and state cases dismissing similar claims under the federal FCA and state statutes similar to the TMFPA, (2) the Compliance Program Guidance from the Office of the Inspector General for the United States Health and Human Services (HHS-OIG), and (3) two advisory opinions by the HHS-OIG evaluating certain benefit programs under the FCA's anti-kickback provisions. We will address each of the arguments and authorities below.[20]

## B.      HCA's Claims Are Not Foreclosed by the Public Disclosure Bar

Shire first contends that the trial court abused its discretion by not dismissing HCA's action under the public disclosure bar[21] because substantially the same allegations were publicly disclosed prior to HCA filing its petition. Nevertheless, Section 36.113(b) of the Texas Human Resources Code states, "The court shall dismiss an action or claim under [the TMFPA], *unless opposed by the attorney general . . . .*" TEX. HUM. RES. CODE ANN. § 36.113(b) (emphasis added). After Shire petitioned this Court for mandamus relief, the State of Texas, through the Office of the Attorney General, filed a response stating, "Texas now notifies the Parties and this Court that the State opposes dismissal of HCA's *qui tam* TMFPA enforcement action on public disclosure grounds." Therefore, we need not determine whether the trial court erred by denying

---

[20]Initially, we note that Shire does not explain how the reasoning relied upon by those authorities forecloses HCA's TMFPA claims as a matter of Texas law. Rather, it seems to imply that we are required to reach that conclusion in this case simply because everyone else reached that conclusion under the procedural rules and anti-kickback statutes of other jurisdictions. Although we will consider the legal authority relied upon by these authorities in deciding this case, the mere fact that they reached that conclusion under federal or state laws is irrelevant to our analysis.

[21]*See supra* note 2.

Shire's motion to dismiss on public disclosure grounds because the State's opposition has rendered that ground moot. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 166–67 (Tex. 2012) ("[A] suit can become moot at any time, including on appeal, and . . . courts have an obligation to take into account intervening events that may render a lawsuit moot.").

Shire contends that the State waived its right to exercise its statutory veto because it did not object in the trial court before that court ruled on Shire's motion to dismiss. However, the TMFPA does not place any time limitation on when the State must assert its statutory opposition to dismissal, and the trial court has not yet rendered a final, appealable judgment that would bar the introduction of arguments not raised in the trial court. In addition, the State does not seek to reverse the trial court's ruling by its opposition to dismissal; it seeks to affirm it. Therefore, we find that the attorney general's exercise of its statutory veto was timely.[22]

---

[22]We also note that the public disclosure bar in the Federal False Claims Act was designed to give the government—the true plaintiff in a *qui tam* lawsuit—a defense against sharing the fruits of its recovery of fraudulently paid claims with outside attorneys and third-party litigants in "'parasitic lawsuits' based upon publicly-disclosed information in which would-be relators 'seek remuneration although they contributed nothing to the exposure of the fraud.'" *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 295–96 (S.D.N.Y. 2013). In other words, once the fraud has been disclosed, the government—which has a bevy of attorneys already in its employ—need not use the procedure of a *qui tam* lawsuit to recover its losses, but it may decide to use that procedure when it deems it beneficial to rely on non-government attorneys. When Section 36.113(b)'s veto provision—"unless opposed by the attorney general"—is read in that context, then it logically follows that the statutory veto exists to permit the state to forego its defense against sharing its recovery on a case-by-case basis rather than to provide the defendant alleged to have committed fraud with a defense to liability. Accordingly, because the defense belongs to the state and because the statutory veto allows the attorney general to waive that defense whenever it desires to do so, it is questionable whether a defendant alleged to have defrauded the state would have standing to object to the attorney general's exercise of that statutory veto. Nevertheless, we need not decide this question because we find that the attorney general's exercise of its statutory veto under the TMFPA was timely.

**C.    Shire Does Not Establish that it is Legally Impossible for HCA to Establish that the Programs Are Kickbacks as a Matter of Law**

**1.    Introduction**

Shire also contends that the trial court abused its discretion because the two programs at issue are not kickbacks as a matter of law, and therefore, it was legally impossible for HCA to recover on its claims. We disagree.

A person violates the TMFPA if he or she "knowingly engages in conduct that constitutes a violation under Section 32.039(b)" of the Texas Human Resources Code—the antikickback statute—which states:

> A person commits a violation if the person . . . offers or pays, directly or indirectly, overtly or covertly any remuneration, including any kickback, bribe, or rebate, in cash or in kind to induce a person to refer an individual to another person for the furnishing of, or for arranging the furnishing of, any item or service for which payment may be made, in whole or in part, under the medical assistance program . . . .

TEX. HUM. RES. CODE ANN. § 32.039(b)(1-d). HCA alleges in its petition that Shire violated the TMFPA by engaging in two kickback schemes to induce physicians to prescribe five medications: Cinryze, Gammagard, Vyvanse, Firazyr, and Natpara.

Under the first program, Shire employed "nurse educators" to "help professionally manage the wellness of patients" who were prescribed one of the five drugs by answering patient questions regarding the medications as well as "teach[ing] the patients how to administer" the drugs. Under the second program, Shire provided a "reimbursement support team" to perform certain insurance-related administrative tasks for patients who were prescribed one of the five drugs, such as "benefits verification, prior authorization assistance, and appeals of coverage denials." HCA's petition alleged that the two programs violated the TMFPA because (1) Shire

"provided in-kind remuneration to Prescribers in the form of free nurse support services in part to induce Prescribers to prescribe" specific medications; (2) in order to induce medical providers to prescribe specific medications, Shire "provided in-kind remuneration to Prescribers in the form of reimbursement support services, saving Prescribers thousands of dollars in administrative expenses"; and (3) Shire "intentionally and knowingly agreed to work with third parties to design and implement the free nurse services and reimbursement support services with the goal of defrauding Medicaid."

### 2. The Case Law Cited by Shire Does Not Establish that the Programs Were Not Kickbacks as a Matter of Law

Because the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b), Section 1128B(b), of the Social Security Act (FAKS), is very similar to the Texas anti-kickback statute, Shire first cites to *Health Choice Alliance, LLC, ex rel U.S. v. Eli Lilly & Co.*, No.5:17-cv-123, 2019 WL 4727422 (E.D. Tex. Sept. 27, 2019), and similar federal cases where the plaintiffs' claims against various pharmaceutical companies were eventually dismissed at the request of the United States Department of Justice.[23]

In *Lilly*, the plaintiff brought a *qui tam* action against Eli Lilly under the Federal False Claims Act (the FCA), which is the federal counterpart to the TMFPA, alleging that the defendants paid doctors illegal kickbacks by providing nurse services and reimbursement-

---

[23]Because the decisions in those cases were based on the law and procedural rules of the federal government and/or other states, a question arises whether those decisions could "foreclose as a matter of law" recovery on HCA's causes of action under the TMFPA for purposes of a Rule 91a motion. Nevertheless, we need not decide this question here. Assuming without deciding that cases interpreting discretionary dismissal under the rules of civil procedure and the law of other jurisdictions based on administrative agency interpretations of such law could foreclose recovery under a Texas statute, the precedent cited by Shire never reached the merits of the suits. Rather, the federal court cases in question ordered dismissal based on the Department of Justice's broad discretionary right to voluntarily dismiss cases under Rule 41(a) of the Federal Rules of Civil Procedure and the federal FCA.

support services for patients who were prescribed certain drugs. *Id.* After conducting an investigation of the claims and "consult[ing] with subject-matter experts [at the Department of Health and Human Services, Office of the Inspector General,] about relators' allegations and the applicability of regulatory safe harbors and government-issued industry guidance," *Health Choice Alliance, LLC, on behalf of U.S. v. Eli Lilly & Co.*, No.5:17-cv-123, 2019 WL 5691988 (E.D. Tex. June 20, 2019), the United States Department of Justice intervened and moved to dismiss the action because it had concluded that the programs at issue were "common industry practices" that were "appropriate and beneficial to federal healthcare programs and their beneficiaries." Because the FCA authorized the United States to dismiss a *qui tam* action over the relator's objection, the trial court granted the United States' motion to dismiss. *See* 31 U.S.C.A. § 3730(c)(2)(A).

*Lilly* was recently affirmed by the Fifth Circuit Court of Appeals. *See U.S. ex rel, Healthcare Alliance, LLC, et al. v. Eli Lilly & Co., et al.*, No. 19-40906, 2021 WL 2821116 (5th Cir. July 7, 2021). Although the Fifth Circuit noted that there is a split of authority among the federal circuits regarding "what is required for the government to dismiss a case under [the federal qui tam statute]," *id*. at *4, it assumed, without deciding, that the most burdensome standard adopted by the Ninth Circuit Court of Appeals applied, *id.* at *8 (citing *U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998)). It also noted, "Under the *Sequoia Orange* test, the government must first show that there is: (1) 'a valid government purpose; and (2) a rational relation between dismissal and accomplishment of that purpose.'" *Id*. (quoting *Sequoia Orange*, 151 F.3d at 1145). It then noted, "To show a rational relation, 'there need not be a tight fitting relationship between [dismissal and the stated

38

purpose]; it is enough that there are plausible, or arguable, reasons supporting the [decision to dismiss]." *Id.* (quoting *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005)). It concluded, "If the government makes its showing, the burden shifts to the *qui tam* relator to show that 'dismissal is fraudulent, arbitrary and capricious, or illegal.'" *Id.* (quoting *Sequoia Orange*, 151 F.3d at 1145).

The Fifth Circuit found that the government had met its burden under the *Sequoia Orange* test and the *qui tam* relator had not. *Id.* at \*8. In finding that the government met its burden, the Fifth Circuit noted that "the government offered two valid purposes to justify dismissal," that "the allegations . . . lack[ed] sufficient merit to justify the cost of investigation and prosecution," and that "'further litigation . . . [would] undermine practices that benefit federal healthcare programs by providing patients with greater access to product education and support.'" *Id.* Shire cites to this language as support for its argument that Shire's claims that the marketing programs in this case constitute kickbacks under the TMFPA are foreclosed as a matter of law and, therefore, that dismissal was required under Rule 91a.

Nevertheless, Shire's reading of *Lilly* carries that court's holding too far. The Fifth Circuit did not hold that the government had established that "the allegations . . . lack[ed] sufficient merit to justify the cost of investigation and prosecution" or that "further litigation . . . [would] undermine practices that benefit federal healthcare programs by providing patients with greater access to product education and support." *Id.* Rather, the Fifth Circuit held that the government's conclusions that the allegations lacked sufficient merit and that they would undermine beneficial practices were valid reasons to move for dismissal. In other words, the Fifth Circuit merely held that the government's reasons for dismissing the *qui tam* lawsuit in

*Lilly* were "plausible, or arguable, reasons supporting the [decision to dismiss]." *Id.* (quoting *Ridenour*, 397 F.3d at 936). Consequently, the cases cited by Shire do not resolve the question whether the marketing programs violate the TMFPA, but merely establish that the government in a *qui tam* lawsuit under the FAKS has broad authority to voluntarily dismiss the suit under the FCA and the Federal Rules of Civil Procedure.[24]

More importantly, *Lilly* is distinguishable from the present case in one significant manner. In *Lilly*, the United States—the true plaintiff in the *qui tam* lawsuit—moved to voluntarily dismiss the complaints. *Id.* at \*1. In this case, however, the true plaintiff—the State of Texas through the Texas Attorney General—not only did not move for dismissal of the suit, it exercised its statutory veto against dismissal under the public disclosure bar. Consequently, the

---

[24]Likewise, in the Seventh Circuit Court of Appeals case cited by Shire—*United States ex rel CIMZNHCA, LLC v. UCB, Inc.*—the court considered whether dismissal of CIMZNHCA, LLC's, *qui tam* suit exceeded the scope of the Department of Justice's right to dismiss such cases under the Federal Rules of Civil Procedure. *United States ex rel CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d at 849–50. The court concluded that the only limitation on the government's absolute discretion under Rule 41(a)(1)(A)(i) to dismiss an action "by serving a notice of dismissal any time 'before the opposing party serves either an answer or a motion for summary judgment," *id.* at 849, in a federal *qui tam* case is that it must provide the "relator [with] . . . notice and [the] opportunity to be heard," *id.* at 850. The Seventh Circuit explained that the statutory notice requirement limits the government's right to dismiss only to the extent that exercise of that right would deny the relator due process of law since "'the statute gives the relator himself an interest *in the lawsuit*' as well as a partial assignment of the government's damages." *Id.* at 851 (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772, 773 (2000)). It then concluded that "[e]xecutive action is not due process of law when it 'shocks the conscience'[;] when it 'offend[s] even hardened sensibilities'[;] or when it is 'too close to the rack and the screw to permit of constitutional differentiation,'" *id.* at 852 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)), and that "[w]herever the limits of the government's power lie, this case is not close to them," *id.* In concluding that the government's decision to dismiss the federal *qui tam* claims in that case "oppresses no one and shocks no one's conscience," it noted that the government had relied on the agency guidance, advisory opinions, and final rulemakings in exercising its right to dismiss. Consequently, the Seventh Circuit only held that the government's exercise of its right of dismissal under the FCA did not oppress or shock the court's conscience and fell within the government's absolute discretion to dismiss under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. *Id.* at 852.

federal court cases cited by Shire do not establish that HCA's TMFPA claims are foreclosed as a matter of law.[25]

### 3.    The HHS-OIG Compliance Program Guidance Does Not Establish that the Programs Are Not Kickbacks as a Matter of Law

Shire also cites to, and HCA agrees with, the general provisions of the HHS-OIG's Compliance Program Guidance recognizing that "[p]harmaceutical manufacturers sometimes offer purchasers certain support services in connection with the sale of their products," including "billing assistance tailored to the purchased products, reimbursement consultation, and other programs specifically tied to support of the purchased product" and that such product-linked services would not "raise kickback concerns" unless they were coupled with additional services that provided "substantial independent value to the purchaser."  68 Fed. Reg. 23731, 23735 (2003).  However, the parties disagree on whether the programs at issue provide substantial independent value.

Shire argues that two programs cannot be kickbacks because HCA's petition makes clear that the two services are specifically tied to the support of the five medications and makes no allegation that Shire allows patients or physicians to use the services in connection with other drugs.  Therefore, Shire argues, HCA has failed to show how the services delivered independent value to providers.  By contrast, HCA contends that the programs are, or at least can be,

---

[25]The other cases cited by Shire involved voluntary dismissals by the government as well.  *See Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-CV-126-RWS-CMC (E.D. Tx. June 29, 2018) (case dismissed upon request by the United States); *U.S. ex rel Harris v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 489 (E.D. Pa. 2019) (government "concluded that educational programs, informational support, medication instruction, and nurse access and support are not 'remuneration' and are programs that are 'appropriate and beneficial to the federal health programs and their beneficiaries'"); *U.S. ex rel. NHCA-TEV, LLC v. Teva Pharm. Prods. Ltd.*, No. 17-2040, 2019 WL 6327207, at *5 (E.D. Pa. Nov. 26, 2019) (relator "fail[ed] to undercut the government's position that these services are common and beneficial to patient care"); *U.S. ex rel. SCEF, LLC v. AstraZeneca, Inc.*, No. 2:17-CV-1328-RSL, 2019 WL 5725182, at *2 (W.D. Wash. Nov. 5, 2019).

41

kickbacks because, under the TMFPA and the federal regulations, independent value includes any "service" that would "eliminate an expense that the physician would have otherwise incurred" or any "service" that is "sold to a physician at less than fair market value." 68 Fed. Reg. 23731, 23737. HCA argues that Shire's services meet both tests because, as alleged in its petition, the services at issue "(i) eliminate staff and administrative expenses that a Prescriber would have to incur each time it writes a prescription; and (ii) Shire did not charge the Prescribers fair market value for the Free Nurse and Support Services program."

Shire does not point to any caselaw interpreting the HHS-OIG guidelines, and the guidelines themselves merely constitute the OIG's non-binding opinion.[26] In addition, the introduction to the section cited by Shire—entitled Key Areas of Potential Risk—states, "The following discussion highlights several known areas of potential risk. The propriety of any particular arrangement can only be determined after a detailed examination of the attendant facts and circumstances." *Id.* at 23731. Such a detailed factual examination is inconsistent with Rule 91a.[27] Accordingly, the guidelines do not establish that HCA's recovery on its claims is foreclosed as a matter of law (i.e., legally impossible) for purposes of Rule 91a.

### 4. The HHS-OIG Advisory Opinions Do Not Establish that the Programs were Not Kickbacks as a Matter of Law

Shire also cites to two HHS-OIG advisory opinions in which it asserts that the HHS-OIG determined that arguably similar programs—a computerized electronic interface system between physicians and a hospital and a multi-component reimbursement support system—would not

---

[26]Moreover, nothing in the TMFPA expressly negates HCA's claims, and the statutory definition of kickback is so broadly worded that we cannot say that it is not possible that the programs in this case fell within that definition. Thus, the language of the TMFPA does not—by itself—foreclose HCA's recovery as a matter of law.

[27]*See supra* note 15.

violate the federal anti-kickback statute. OIG Advisory Op. No. 12-20 (2000), 2012 WL 7148096; OIG Advisory Op. No. 00-10 (2000), 2000 WL 35747420. Nevertheless, the opinions expressly disclaim any opinion whatsoever "with respect to the application of any . . . state . . . statute" and also state that they are not "applicab[le] to other arrangements [or programs], even those which appear similar in nature or scope." And Shire does not cite to any Texas court or regulatory agency that has determined whether the programs are kickbacks under the TMFPA.

Thus, even though the FCA is similar to the TMFPA, the fact that the OIG specifically disclaimed any opinion as to the proposed programs' legality under any state law significantly undercuts their value as persuasive precedent on whether the programs in this case violate the TMFPA. While we remain free to consider whether a similar result should be reached under the TMFPA for the same reasons cited by the HHS-OIG's determination of federal law, such a determination does not rise to the level of settled law that would justify a finding that HCA's recovery under the TMFPA is foreclosed as a matter of law as is required by Rule 91a. It would also require an examination of the facts in this case beyond the petition's allegations. And, in opinion number 00-10, the OIG concluded that the proposed programs "implicated the Federal anti-kickback statute," but it elected not to sanction the pharmaceutical companies based on its belief that any such violations would only constitute a minimal burden on the federal program. This does not establish that the programs are not kickbacks under the TMFPA as a matter of law; in fact, it could actually support the opposite conclusion. Accordingly, the advisory opinions fail to establish that recovery by HCA on its claims is foreclosed by the cited authorities as a matter of law.

43

**D.     Did HCA Sufficiently Plead Scienter?**

Shire's final argument is that the trial court erred by not granting its motion to dismiss because HCA's petition "fail[ed] to plead that Shire acted with the requisite scienter."  The sole requisite scienter necessary for liability to attach under the TMFPA is that the defendant act "knowingly."  TEX. HUM. RES. CODE ANN. §§ 36.001, 36.002(13).  Section 36.0011 states:

> (a)     For purposes of this chapter, a person acts "knowingly" with respect to information if the person:
>
> > (1)     has knowledge of the information;
> >
> > (2)     acts with conscious indifference to the truth or falsity of the information; or
> >
> > (3)     acts in reckless disregard of the truth or falsity of the information.
>
> (b)     Proof of the person's specific intent to commit an unlawful act under Section 36.002 is not required in a civil or administrative proceeding to show that a person acted "knowingly" with respect to information under this chapter.

TEX. HUM. RES. CODE ANN. § 36.0011.  HCA's petition alleged, in relevant part,

> Defendants intentionally and knowingly agreed to work with third parties to design and implement the free nurse services and reimbursement support services with the goal of defrauding Medicaid by causing the submission of claims for the Covered Products that were knowingly and intentionally induced by unlawful remuneration.
>
> . . . .
>
> Defendants are sophisticated corporations with years of experience in the healthcare industry.  They are well-versed in the regulations prohibiting remuneration and kickbacks, including Texas law, as well as the regulatory guidance, and are aware of its prohibition on the use of kickbacks to induce prescriptions of Covered Products.  They nonetheless designed and executed the two schemes to use kickbacks to boost prescriptions and increase profits in violation of Texas law.

44

. . . .

The Confidential Interviewees confirm that Defendants' sales reps and nurse educators are trained by Shire to use [Nurse Support Services] as a selling tool to induce Prescribers to prescribe the Covered Products.

. . . .

Defendants readily assumed the expense the Prescribers would otherwise have had to incur, knowing that the availability of Reimbursement Support Services would act as a powerful inducement to Prescribers to recommend Covered Products over a competitor's products, especially in Texas where reimbursement for administrative expenses associated with approval is prohibited.

. . . .

During the relevant time period, Defendants' actions knowingly have caused . . . others to submit millions of dollars in claims to Texas Medicaid for Covered Products provided to beneficiaries as a result of Defendants' illegal marketing and quid pro quo arrangements.[28]

In its motion to dismiss, Shire argued both that HCA's petition "fail[ed] to plead that Shire acted with the requisite scienter" and that HCA "cannot allege that Shire [acted] with scienter." We address the arguments separately.

### 1. Shire's Argument that HCA Did Not Sufficiently Plead Scienter

Shire's argument that HCA's petition failed to allege that it acted with the requisite scienter essentially asserts that the petition fails to state enough detail regarding the facts upon which the claim is based. This is not an argument upon which dismissal can be granted under

---

[28]We note that, under the federal statute corresponding to the TMFPA, the FCA, a *qui tam* relator "may satisfy the . . . scienter requirement with general allegations, as long as he sets forth specific facts supporting an inference of fraud." *United States ex rel. Woodard v. DaVita, Inc.*, No. 1:05-CV-227, 2011 WL 13196556, at *8 (E.D. Tex. May 9, 2011) (mem. and order). "The inference may be drawn by alleging facts showing a defendant's motive or 'by identifying circumstances that indicate conscious behavior on the part of the defendant . . . .'" *United States v. Americus Mortg. Corp.*, No. 4:12-CV-02676, 2014 WL 4274279, at *9 (S.D. Tex. Aug. 29, 2014) (mem. and order) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 2003)).

Rule 91a.[29]  Rather, Shire's contention that HCA failed to sufficiently plead an element of its case falls squarely within the special exception procedure under Rule 91.  *See* TEX. R. CIV. P. 91. Accordingly, dismissal under Rule 91a is not permitted for this type of pleading objection.

### 2.    Shire's Argument that HCA Cannot Plead Scienter

Shire's argument that it was legally impossible for HCA to sufficiently plead that it acted with the requisite scienter—thereby making it legally impossible for HCA's petition to succeed—likewise fails.  Shire argues that, because it acted in accordance with HHS-OIG guidance as the "HHS-OIG has long assured pharmaceutical companies that such programs are not kickbacks when they are offered only in support of specific products and cannot be used for other purposes," HCA cannot establish that it knowingly violated the TMFPA by engaging in the two programs at issue.  In support of these arguments, Shire cites to federal cases where the district courts dismissed similar claims for failure to sufficiently plead scienter.  However, the cases are inapplicable here because they merely hold that the plaintiff's claims under the FAKS and the FCA were implausible under federal Rule 12b(6), which is different from the "no basis in law" standard of Rule 91a, which requires a showing that recovery for the plaintiff is foreclosed, i.e., legally impossible.  *See* TEX. R. CIV. P. 91a; *U.S. ex rel Forney v. Medtronic, Inc.*, No. 15-6264, 2017 WL 2653568, at *3–5 (E.D. Pa. Jun. 19, 2017); *U.S. ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584 (E.D. Pa. 2012).  Therefore, the cases cited by Shire do not establish that HCA's ability to satisfy the TMFPA's scienter pleading requirements is foreclosed as a matter of law.

---

[29]*See supra* note 19.

Shire also cites to the two HHS-OIG advisory opinions referenced above, where the HHS-OIG determined that programs arguably similar to those at issue in this case would not be subject to sanctions under the FAKS. OIG Advisory Op. No. 12-20 (2000), 2012 WL 7148096; OIG Advisory Op. No. 00-10 (2000), 2000 WL 35747420. However, Shire's reliance on these OIG advisory opinions stretches the reach of those advisory opinions too far. The chain of logic offered by Shire is (1) the OIG "assured" Shire that the programs did not violate the FCA, (2) because it acted in reliance on the OIG's assurances, it could not have violated the FCA knowingly, (3) the TMFPA is similarly worded to the FCA, and therefore, (4) because it acted in reliance on the OIG's assurances that the programs did not violate the FCA, it could not possibly have violated the TMFPA knowingly. Nevertheless, the opinions state that they "cannot be relied upon" by any other party[30] and "may not be introduced into evidence in any matter." Therefore, the opinions expressly negate Shire's reliance on those opinions.

In addition, Texas courts are not bound by a federal agency's interpretation of state law, *Beavers v. Northrup Worldwide Aircraft Services, Inc.*, 821 S.W.2d 669, 674 (Tex. App.— Amarillo 1991, writ denied) (citing *Wichita Royalty Co. v. City National Bank*, 306 U.S. 103, 109 (1939)) ("in matters of state law, state courts are not bound by decisions of federal courts of appeals"). Therefore, a federal agency could never give "assurance" that the programs did not violate state law no matter how similar the federal and state statutes may be and no matter how persuasive its reasoning may be. Furthermore, to the extent that a federal agency attempted to provide such an assurance, reliance on such an assurance would not be reasonable. To support

---

[30]The names of the requesting parties are redacted in the published versions. Nowhere in its briefs in this Court or to the trial court did Shire argue that it was the requesting party in either opinion. In the absence of any indication that it was the requesting party, the express disclaimer would apply to Shire as well as any other non-party.

47

the reliance necessary to negate the TMFPA's scienter requirement, Shire would—at a minimum—need to point to an "assurance" by a Texas source that the programs do not violate the TMFPA, and it does not.[31] Accordingly, the advisory opinions cannot support a conclusion that Shire's reliance on the OIG's advisory opinions regarding the FCA negated any possibility that it knowingly violated the TMFPA. In the absence of such proof, Shire has not established that HCA's recovery under the TMFPA is foreclosed as a matter of law due to its inability to establish that Shire acted knowingly.

## VII. Conclusion

Because Shire has failed to show that HCA's claims are foreclosed as a matter of law (i.e., that recovery by HCA is legally impossible) as is required by Rule 91a, we find that the trial court did not abuse its discretion in denying Shire's Rule 91a motion to dismiss. Accordingly, we deny Shire's petition for a writ of mandamus.

Ralph K. Burgess
Justice

Date Submitted    April 28, 2021
Date Decided:    August 6, 2021

---

[31]We express no opinion whether a defendant's reliance on a Texas administrative agency's advisory opinion could negate the scienter requirement under the TMFPA. We merely point out that its reliance on a federal administrative agency's opinion would certainly not do so.